**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ALICE CARSON-JOHNSON | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: BPG-18-3064 |
| BALTIMORE CITY POLICE DEPT., *et al.* | * | |
| Defendants | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**<u>MEMORANDUM OPINION</u>**

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4. (ECF No. 18). Currently pending are defendants' Motion for Summary Judgment ("Motion") (ECF No. 53), plaintiff's Opposition to defendants' Motion for Summary Judgment ("Opposition") (ECF No. 69), defendants' Reply in Support of Motion for Summary Judgment ("Reply") (ECF No. 71), and plaintiff's Surreply (ECF No. 77). No hearing is deemed necessary. Loc. R. 105.6. For the reasons discussed herein, defendants' Motion for Summary Judgment (ECF No. 53) is GRANTED.

I.     **<u>BACKGROUND</u>**

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party, which is the plaintiff in this case. <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007). Plaintiff joined the Baltimore Police Department ("BPD") as a police officer trainee in 1997 and became a police officer following her graduation from the BPD police academy. (ECF No. 53-1 at 2-3). In or around October 2012, and again in or around April 2014, plaintiff was detailed to the Professional Development &

Training Academy ("PDTA").  (Id. at 3).  Plaintiff, who was a combat medic in the military and continued to serve during her employment with BPD until her military retirement in 2011, taught a variety of courses at the PDTA and served as the lead instructor for the Law Enforcement Emergency Medical Care Course ("LEEMCC").  (Id. at 3-4).  When plaintiff became the LEEMCC lead instructor, her immediate supervisor was Sergeant Marlon Moseley.  (Id. at 3).

**Refusal to Provide Key to Training Room**

In or around November 2014, Sergeant Moseley was detailed to another area within BPD, and plaintiff's direct supervisor was Sergeant Brian Dayton.  (ECF No. 57 at 48:9-18, 50:16-51:6).  On or around November 7, 2014, and again on or around November 24, 2014, plaintiff refused to obey a direct order from Sergeant Dayton to provide him with the key to the LEEMCC training room.  (ECF No. 53-7 at 3).  Plaintiff does not dispute that she refused to give the key to Sergeant Dayton.  (ECF No. 69-1 at 14-15).  Instead, plaintiff states that Sergeant Moseley continued to be in charge of the LEEMCC program despite his detail elsewhere and had ordered plaintiff not to give the key to the LEEMCC training room to anyone without his permission.  (Id.)  Sergeant Dayton charged plaintiff with insubordination regarding these two incidents, and a BPD Internal Affairs ("IA") investigation occurred.  (ECF No. 53-7).  The IA investigation finding sustained plaintiff's charges of "Misconduct/Insubordination" and "Misconduct/General" "based on the totality of the testimony."  (Id. at 12).  Plaintiff's punishment for these charges was written counseling.  (ECF No. 53-15).

**Plaintiff's Discrimination Complaint**

On or around November 12, 2014, in between the two incidents when plaintiff refused to give Sergeant Dayton the key to the LEEMCC training room, plaintiff initiated a discrimination

complaint with BPD's Equal Opportunity & Diversity Section ("EODS") against Sergeant Dayton for showing favoritism to others, micromanaging plaintiff, and failing to speak with plaintiff directly.  (ECF No. 53-15 at 8-9).  Plaintiff sent a follow-up email to EODS on or around August 27, 2015, stating that she believed she was "being retaliated [against] by supervision [sic]."  (ECF No. 69-7 at 57).  On or around January 15, 2016, following its investigation, EODS determined that there was no "supporting evidence to corroborate the claim that Sergeant Dayton displayed disrespectful behavior against [plaintiff] because of her race or gender."  (Id. at 5).

### Missed Meeting with State's Attorney's Office

On or around August 28, 2015, plaintiff was scheduled to have a meeting with the Office of the State's Attorney for Baltimore City ("SAO") regarding the upcoming Freddie Gray trial. (ECF No. 69-1 at 16).  Specifically, plaintiff believed she would be meeting with Assistant State's Attorney ("ASA") John Butler.  (Id.)  ASA Butler told plaintiff the day before the meeting that he was unable to attend, but that plaintiff would meet with Deputy State's Attorney ("DSA") Janice Bledsoe.  (Id. at 17).  Plaintiff did not appear for the scheduled meeting and DSA Bledsoe contacted BPD Chief Rodney Hill, the head of IA.  (Id. at 18).  Chief Hill contacted Lieutenant Sheri Sturm, who was the head of PDTA.[1]  (Id.)  Lieutenant Sturm located plaintiff and, when questioned about the meeting with the SAO, plaintiff stated that the meeting had been cancelled by ASA Butler. (ECF No. 53-8 at 1138).  Text messages between ASA Butler and plaintiff indicate, however, that ASA Butler asked if plaintiff was planning to come to the meeting with DSA Bledsoe and plaintiff replied that she was addressing a security issue.  (ECF No. 53-15).

---

[1] Lieutenant Sturm is also referred to as the Acting Captain of PDTA.  (ECF No. 53-15 at 1755).

Lieutenant Sturm filed an IA complaint against plaintiff because plaintiff had lied about the meeting with DSA Bledsoe being cancelled and because plaintiff failed to attend the scheduled meeting regarding a high-profile case.  (ECF No. 53-8 at 1136, 1138).  Lieutenant Sturm charged plaintiff with "Misconduct/General" and "Neglect of Duty."  (Id. at 1132).  Following an investigation, on or around July 11, 2016, IA sustained these charges against plaintiff.  (Id. at 1132, 1134).  On or around July 22, 2016, plaintiff requested an Administrative Hearing Board hearing.  (Id. at 1113).  On or around October 3, 2016, an administrative hearing took place.  (Id. at 1105-08).  The Hearing Board found plaintiff guilty of these charges and recommended a "Middle Letter of Reprimand" as punishment.  (Id.)  On or around February 14, 2017, a Middle Letter of Reprimand was entered in plaintiff's personnel record.  (Id. at 1100).

**Involuntary Transfer to Headquarters Security**

On or around August 30, 2015, two days after plaintiff missed the meeting with DSA Bledsoe, Lieutenant Sturm asked for plaintiff to be involuntarily transferred from PDTA "due to unsatisfactory performance," specifically "fail[ing] to attend a critical meeting regarding a high profile court case."  (ECF No. 53-15 at 1754).  On or around September 3, 2015, plaintiff was called to a meeting with Lieutenant Sturm, Lieutenant Lloyd Wells, and Sergeant Habib Kim.  (ECF No. 69-15 at 72, ECF No. 69-22 at 37).  At that meeting, plaintiff was advised that she was being involuntarily transferred from PDTA to Headquarters Security.  (ECF No. 53-15 at 1756).  During this meeting, Lieutenant Sturm stated that any supporting documents related to plaintiff's discrimination complaint had been forwarded.  (ECF No. 69-22 at 37-28).  Plaintiff worked at Headquarters Security until her retirement in September 2019.

**Procedural History**

On October 4, 2018, plaintiff filed this action against defendants Gary Tuggle in his official capacity as the Interim Commissioner of the BPD and the Baltimore City Police Department. (ECF No. 1). On January 10, 2019, plaintiff filed an Amended Complaint. (ECF No. 10). Plaintiff asserts three claims: Count I - disparate treatment in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.; Count II - disparate treatment in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"); and Count III - retaliation in violation of Title VII and Section 1981.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is properly considered "material" only if it might affect the outcome of the case under the governing law. Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993). If a party fails to make a showing sufficient to establish the existence of an essential element on which that

party will bear the burden of proof at trial, summary judgment is proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party, but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented.  Anderson, 477 U.S. at 252. In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue.  Celotex, 477 U.S. at 324.  A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment.  Anderson, 477 U.S. at 252.  Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact.  Cox v. Cnty. of Prince William, 249 F.3d 295, 299-300 (4th Cir. 2001).  Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the non-moving party.  Anderson, 477 U.S. at 252.

## III.  DISCUSSION

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex . . . ."  42 U.S.C. § 2000e–2(a).  A separate section of Title VII, its anti-retaliation provision, prohibits an employer from "discriminat[ing] against" an employee because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation.  Id. § 2000e–3(a). Section 1981 "prohibits discrimination on the basis of race."  Nnadozie v. Genesis HealthCare

Corp., 730 F. App'x 151, 156 (4th Cir. 2018).  Claims under Title VII and Section 1981 are both analyzed using the same framework.  Proa v. NRT Mid Atlantic, Inc., 618 F. Supp. 2d 447, 461 (D. Md. 2009) (citing Gairola v. Commonwealth of Va. Dept. of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985)).  This common framework requires that a plaintiff establish liability by: "(1) 'demonstrating through direct or circumstantial evidence that [her] race [or sex] was a motivating factor in the employer's adverse employment action'; or (2) relying on the burden shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)."  Swaso v. Onslow Cty. Bd. of Educ., 698 F. App'x 745, 747 (4th Cir. 2017), as amended (Aug. 11, 2017) (citing Holland v. Wash. Homes, Inc., 487 F.3d 208, 213–14 (4th Cir. 2007)).  In this case, plaintiff does not rely upon direct evidence, and therefore the court turns to the McDonnell Douglas framework.

To establish a claim of disparate treatment pursuant to the McDonnell Douglas framework, a plaintiff must put forth a prima facie case of discrimination alleging that: "(1) she is a member of a protected class; (2) she 'suffered an adverse employment action'; (3) her job performance was satisfactory; and (4) the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination.'"  Swaso, 698 F. App'x at 747 (quoting Adams v. Tr. of Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011)).  To establish a claim of retaliation, plaintiff's prima facie case requires proof of three elements: (1) that the plaintiff engaged in protected activity; (2) that the employer took adverse action against her; and (3) that a causal connection existed between the protected activity and the adverse employment action.  Roberts v. Glenn Industrial Group, Inc., 998 F.3d 111, 122 (4th Cir. 2021) (citing Foster v. Univ. of Md.-Eastern Shore, 787 F.3d 243, 250 (4th Cir. 2015)).

The court will first address the common element between the two claims – whether an adverse employment action occurred.  Thereafter, the other elements of the prima facie cases for plaintiff's claims of disparate treatment and claims of retaliation will be discussed.[2]

### A. __Adverse Employment Action__

Defendants dispute that plaintiff suffered an adverse action as required to establish her prima facie cases for both her disparate treatment and retaliation claims.  (ECF No. 53-1 at 24-26, 32-33).  Defendants argue that plaintiff did not suffer an adverse employment action because, while she was involuntarily transferred to Headquarters Security, plaintiff was not terminated or suspended, and the transfer did not affect plaintiff's pay or benefits.  (ECF No. 53-1 at 24-27; ECF No. 71 at 7-10).  Plaintiff argues that her involuntary transfer to Headquarters Security constituted an adverse employment action because plaintiff lost the responsibility and prestige inherent in her work at PDTA and, instead, was relegated to menial tasks in a division "that had a stigma attached to it."  (ECF No. 69-1 at 34).

"An adverse [employment] action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).  Reassignments, however, "can only form the basis of a valid . . . claim if the plaintiff can show that the reassignment had some significant detrimental effect on her."

---

[2] The court notes that plaintiff makes a general statement in her Opposition that the Department of Justice's consent decree to which BPD is currently subject provides examples of other BPD practices that mirror plaintiff's argument that she experienced discrimination and retaliation.  (ECF No. 69-1 at 7-9).  As noted by defendants, however, this consent decree was not "intended to be used by third parties to create liability by or against the City or the BPD."  United States v. Police Dept. of Baltimore City, et al., No. JKB-17-99, ECF No. 2-2 ¶ 501.  Therefore, the consent decree has no relevance to the issues before the court.

Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999). "[A] reassignment does not constitute an adverse employment action when the reassignment causes no reduction in compensation, job title, level of responsibility, or opportunity for promotion." Polastre-Jackson v. Colvin, No. ELH-17-228, 2017 WL 6501800, at *13 (D. Md. Dec. 15, 2017); see also Boone, 178 F.3d at 255-57 ("[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position."), White v. City of Annapolis (MD), No. JFM-13-1330, 2015 WL 5009853, at *8 (D. Md. Aug. 21, 2015), aff'd sub nom. White v. City of Annapolis, Md., 639 F. App'x 209 (4th Cir. 2016) ("'[D]issatisfaction with work assignments' does not rise to the level of an adverse employment action"), Amirmokri v. Abraham, 437 F. Supp. 2d 414, 422 (D. Md. 2006), aff'd, 266 F. App'x 274 (4th Cir. 2008) ("[T]he reassignment of [p]laintiff's duties did not constitute a significant decrease in his level of responsibility, and was not an adverse employment action within the meaning of Title VII.").

Regarding plaintiff's retaliation claim, "the standard for an adverse employment action is more lenient than for a substantive discrimination claim," Polastre-Jackson, 2017 WL 6501800, at *13, but plaintiff still must establish "that a reasonable employee would have found the challenged action materially adverse, which in [the retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). "[T]hat [p]laintiff may have felt inadequately challenged by [her] work is not enough to sustain [her] retaliation claim." Amirmokri, 437 F. Supp. 2d at 423.

Here, while plaintiff admits that she "incurred no loss in pay or other economic benefits" after being involuntarily transferred from PDTA to Headquarters Security, she argues that "the loss of responsibility, prestige, and being deprived of doing something at which she excel [sic] and loved" constituted an adverse employment action.  (ECF No. 69-1 at 24-25, 34).  Plaintiff's only citation to the record to support her arguments is to her own affidavit, in which she states that she "was very upset about and depressed over being removed" from PDTA and that "[t]here is also, indeed, a stigma, about being placed in [Headquarters Security] . . . [because that is where] 'screwups' are put."  (ECF No. 69-6 ¶ 40, 43).  Even considering the lower bar necessary to establish an adverse employment action for plaintiff's retaliation claim, that the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination," plaintiff fails to meet her burden.  Burlington Northern & Santa Fe Ry. Co., 548 U.S. at 68.[3]  "[A] party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment." CTB, Inc. v. Hog Slat, Inc., 954 F.3d 647, 658 (4th Cir. 2020) (quoting Williams v. Giant Food Inc., 370 F.3d 423, 433 (4th Cir. 2004)) (citing authority).  Plaintiff fails to offer any evidence to suggest that working in the PDTA was more prestigious or objectively considered a better job than working in Headquarters Security other than her own self-serving affidavit.[4]  Therefore, given a

---

[3] The only case plaintiff cites in support of her argument that her involuntary transfer was an adverse employment action is Burlington Northern & Santa Fe Ry. Co. (ECF No. 69-1 at 34-35). In that case, the plaintiff's reassignment of job duties constituted an adverse action because "the jury had before it considerable evidence that the [plaintiff's reassignment] duties were 'by all accounts more arduous and dirtier'; that the 'forklift operator position [which was plaintiff's job before the reassignment] required more qualifications, which is an indication of prestige'; and that 'the forklift operator position was objectively considered a better job and the male employees resented [plaintiff] for occupying it.'" Burlington Northern & Santa Fe Ry. Co., 548 U.S. at 71. In this case, however, plaintiff has not offered any evidence to suggest that working in the PDTA was more prestigious or "objectively considered a better job" than working in Headquarters Security other than her own testimony.
[4] In fact, although plaintiff maintains there was a "stigma" against Headquarters Security, evidence submitted by defendants provides that Headquarters Security operates in the same manner as any

lack of objective evidence, plaintiff has not generated a factual dispute to "show that the reassignment had some significant detrimental effect on her." Boone, 178 F.3d at 256.

The opinions in Polastre-Jackson v. Colvin, No. ELH-17-228, 2017 WL 6501800, at *1 (D. Md. Dec. 15, 2017) and Amirmokri v. Abraham, 437 F. Supp. 2d 414 (D. Md. 2006) are instructive.   In both cases, the plaintiffs were reassigned from supervisory positions to non-supervisory positions, but the reassignments did not affect the plaintiffs' pay or benefits. Polastre-Jackson, 2017 WL 6501800, at *2, Amirmokri, 437 F. Supp. 2d at 418.   The court found in each case that the reassignment did not constitute an adverse employment action because the plaintiff "did not suffer a decrease in salary or benefits as a result of the reassignment" and did not "show that [they] experienced a decrease in the level of [their] work responsibilities." Polastre-Jackson, 2017 WL 6501800, at *15; see also Amirmokri, 437 F. Supp. 2d at 422-23.   The same circumstances are present in this case.   Indeed, plaintiff admits that her reassignment did not result in decreased pay or benefits and fails to provide objective evidence that she experienced a decrease in work responsibilities. Accordingly, plaintiff has failed to generate a genuine issue of material fact regarding whether she experienced an adverse employment action in the context of both her disparate treatment claim and retaliation claim.[5]   Therefore, plaintiff's prima facie cases for all claims fail and summary judgment for defendants is appropriate.

Even if the court was to assume, which it does not, that plaintiff provided adequate evidence to create a factual dispute regarding whether she experienced an adverse employment

---

other division in the BPD and that officers are not sent to Headquarters Security "as any punishment or discipline."  (ECF No. 53-11 ¶ 4-7).

[5] Plaintiff's charges of insubordination, for which she received "written counseling," and her charges related to her missed meeting with the ASA, for which she received a "Middle Letter of Reprimand," also do not constitute adverse employment actions.  "[I]ssuing . . . a verbal reprimand [or] an informal letter of reprimand" does not "constitute[] an adverse employment action in a retaliation claim." Polastre-Jackson, 2017 WL 6501800, at *14.

action, plaintiff fails to meet several of the other elements required to establish prima facie cases

for both her disparate treatment claims and her retaliation claims as discussed below.

### B. **Disparate Treatment Claims**

Defendants argue that summary judgment is proper as to plaintiff's disparate treatment

claims because plaintiff is unable to demonstrate a prima facie case of discrimination.  (ECF No.

53-1 at 24-29).  In her Opposition, plaintiff seemingly abandons most of her disparate treatment

claims and only discusses a single incident in which Officer Belechto, a white male, was allegedly

not disciplined for missing a meeting with an ASA, unlike plaintiff who was transferred to

Headquarters Security after missing a meeting with an ASA.  (ECF No. 69-1 at 32-33).[6]

To establish a prima facie case, plaintiff must show: "(1) she is a member of a protected

class; (2) she 'suffered an adverse employment action'; (3) her job performance was satisfactory;

and (4) the adverse employment action occurred 'under circumstances giving rise to an inference

of unlawful discrimination.'"  Swaso, 698 F. App'x at 747 (quoting Adams, 640 F.3d at 558).

Regarding the first element, defendants do not dispute that plaintiff, an African American female,

is a member of two protected classes.  (ECF No. 53-1 at 24).  Plaintiff, however, fails to meet the

remaining elements of this prima facie case.

---

[6] Plaintiff also argues that the affidavit of Officer Tarsha Taru offered by defendants (ECF No. 53-2) conflicts with Officer Taru's earlier written statements in which she showed support and agreed that plaintiff had experienced discrimination and/or retaliation.  (ECF No. 69-1 at 12-13, 26-28). Defendants maintain that Officer Taru's affidavit does not conflict with past statements and also question the authenticity and admissibility of text messages between plaintiff and Officer Taru offered by plaintiff in her Opposition.  (ECF No. 71 at 14-15).  Officer Taru's testimony, however, was relevant to plaintiff's claims of disparate treatment regarding the relocation of her office, the lack of available training, and the assignment of work details – all claims that plaintiff does not address in her Opposition.  Therefore, the court does not need to reach the question of whether Officer Taru's statements conflict with each other or whether the text messages are admissible. Notwithstanding, the court concludes that Officer Taru's statements do not create a genuine issue of material fact.

With respect to the third element, defendants argue that plaintiff's job performance was not satisfactory because "her conduct, behavior, and attitude were unacceptable and unsatisfactory." (ECF No. 53-1 at 24, ECF No. 71 at 5-7).  Defendants cite to affidavit and deposition testimony from plaintiff's past supervisors which notes plaintiff was a difficult person to manage and did not listen to directions.  (Id.)  Defendants also cite to plaintiff's charges of insubordination, for which she received "written counseling," and her charges related to her missed meeting with the ASA, for which she received a "Middle Letter of Reprimand," as further evidence that plaintiff's performance was not satisfactory.[7]  (Id.)

Plaintiff offers no argument regarding whether her job performance was satisfactory, besides stating that she was highly qualified to teach at PDTA and referencing her resume and various certifications.  (ECF No. 69-1 at 5, ECF No. 69-2).  Whether plaintiff was qualified to work at PDTA, however, does not speak to whether plaintiff was satisfactorily performing her work at PDTA.  Plaintiff carries the "initial burden" to establish that her job performance was satisfactory in order to satisfy her prima facie case of disparate treatment.  McDonnell Douglas Corp., 411 U.S. at 802.  Here, plaintiff has failed to meet that burden, even though it "is a fairly low threshold to meet."  Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc., 921 F. Supp. 2d 470, 485 (D. Md. 2013) (quoting Boyd v. Presbyterian Hosp., 160 F. Supp. 2d 522, 535 (S.D.N.Y. 2001)).  Plaintiff offers no argument to counter defendants' argument that her job performance was not satisfactory, and offers no evidence, such as performance reviews or other documentation, to rebut defendants' affidavit and deposition testimony from past

---

[7] While plaintiff disputes the facts that led to these charges, the court will not relitigate these disciplinary actions.  These facts were already determined during the BPD internal investigation and disciplinary process, and plaintiff chose not to appeal the administrative board's ruling to the Circuit Court of Baltimore City.  (ECF No. 57 at 200:8-14).

supervisors.  Therefore, plaintiff has failed to establish that a genuine issue of material fact exists regarding this element of plaintiff's prima facie case.

Finally, plaintiff argues the fourth element of her prima facie case, that the adverse employment action occurred under circumstances giving rise to an inference of discrimination, is met here because Officer Belechto, a white male, received better treatment when he missed a meeting with an ASA compared to when plaintiff missed a meeting with an ASA.  (ECF No. 69-1 at 32-33).  Plaintiff maintains that she was involuntarily transferred to Headquarters Security for missing the meeting with DSA Bledsoe, but Officer Belechto was not disciplined in any way for missing a meeting with an ASA.  (Id.)  "The fourth element is met if 'similarly-situated employees outside the protected class received more favorable treatment.'"  Id. at 747 (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).  A plaintiff may satisfy the fourth element by showing "a general pattern of racial discrimination in the practices of a defendants," or by relying on comparator evidence.  Id. at 748. When relying on comparator evidence, a plaintiff must show "that the comparator is similarly situated in all relevant aspects."  Ryan v. McAleenan, No. ELH-19-1968, 2020 WL 1663172, at *18 (D. Md. Apr. 3, 2020).  To be "similar in all relevant aspects," a plaintiff must allege facts that she and the comparator "dealt with the same supervisor, [were] subject to the same standards, and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  Id. (quoting Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010)).

The only evidence of record to support plaintiff's claim that Officer Belechto is a proper comparator to plaintiff are documents written by plaintiff herself.  Specifically, plaintiff relies on an email sent from plaintiff to Officer Belechto detailing her interactions with the ASA with whom Officer Belechto was supposed to meet and an internal PDTA memorandum explaining plaintiff's

discussion with said ASA and her unsuccessful attempts to contact Officer Belechto.  (ECF No. 69-7 at 41-43).  Once again, plaintiff fails to provide any evidence outside of her own "self-serving opinion," which "cannot, absent objective corroboration, defeat summary judgment."  CTB, Inc., 954 F.3d at 658 (quoting Williams, 370 F.3d at 433).  Additionally, plaintiff fails to show that she and Officer Belechto are "similar in all relevant aspects."  Ryan, 2020 WL 1663172, at *18.  While plaintiff maintains that Officer Belechto and plaintiff were "under the same chain of command," there is no information provided regarding whether there were "differentiating or mitigating circumstances" between the incidents involving these two officers.  Ryan, 2020 WL 1663172, at *18 (quoting Haywood, 387 F. App'x at 359).  Indeed, as defendants note, plaintiff's "belief that [Officer Belechto] was not disciplined is not evidence.  [Plaintiff] did not depose Officer Belechto or [the ASA], has not taken statements from anyone else involved in the alleged incident, and has pointed only to her memo of the incident as conclusive proof of discrimination."  (ECF No. 71 at 12) (emphasis omitted).  Accordingly, plaintiff fails to establish this element of her prima facie case to sustain her disparate treatment claims, and summary judgment for defendants is appropriate for Counts I and II.

### C. Retaliation Claims

With regard to plaintiff's retaliation claims pursuant to Title VII and Section 1981, defendants maintain that summary judgment is appropriate because plaintiff cannot establish that defendants retaliated against her.  (ECF No. 53-1 at 30-35).  To establish a prima facie case of retaliation, plaintiff must show: (1) that plaintiff engaged in protected activity; (2) that the employer took adverse action against her; and (3) that a causal connection existed between the protected activity and the adverse employment action.  Roberts, 998 F.3d at 122 (citing Foster, 787 F.3d at 250).

As to the first element, defendants do not dispute that plaintiff engaged in protected activity when she filed a discrimination complaint with BPD's Equal Opportunity & Diversity Section ("EODS") against Sergeant Dayton but, as discussed above, plaintiff did not suffer an adverse employment action.   Even if plaintiff were able to establish that she suffered an adverse employment action, however, plaintiff fails to establish the third element, a causal connection between the protected activity and the adverse employment action.  "In evaluating causation at the prima facie stage of the retaliation analysis, courts often consider: (1) whether the allegedly retaliatory actor was aware that the plaintiff had engaged in the protected activity at the time of the allegedly retaliatory act, and (2) the temporal proximity between the protected activity and the allegedly retaliatory act."  Lewis v. Baltimore City Bd. of School Comm'rs., 187 F. Supp. 3d 588, 596 (D. Md. 2016).  "Evidence that the alleged adverse action occurred shortly after the employer became aware of the protected activity is sufficient to satisfy the less onerous burden of making a prima facie case of causation."  Allen v. Rumsfeld, 273 F. Supp. 2d 695, 707-08 (D. Md. 2003).

Here, plaintiff argues that this causal connection is established by virtue of the temporal proximity between plaintiff's email to EODS on August 27, 2015, which stated that she believed she was "being retaliated against by supervision," and Lieutenant Sturm's recommendation to involuntarily transfer plaintiff on August 30, 2015.  (ECF No. 69-1 at 34).  While temporal proximity can establish a causal link, there is no evidence to suggest that Lieutenant Sturm was aware of plaintiff's email to EODS when Lieutenant Sturm made the recommendation to transfer plaintiff.  Plaintiff provides no evidence or citation to the record to indicate that Lieutenant Sturm was aware of plaintiff's email, but summarily states that "[t]he proximity in time of [p]laintiff's filing and her ouster establishes a prima facie case of retaliation."  (ECF No. 69-1 at 34).  "If an employer . . . never realized that its employee engaged in protected conduct, it stands to reason

that the employer did not act out of a desire to retaliate for conduct of which the employer was not aware." Villa v. CavaMezze Grill, LLC, 858 F.3d 896, 901 (4th Cir. 2017).   Under these circumstances, the close proximity of plaintiff's email to EODS and Lieutenant Sturm's recommendation to transfer plaintiff does not establish a causal connection due to the lack of evidence to suggest that Lieutenant Sturm was aware of this email.

Additionally, during her deposition, Lieutenant Sturm stated that she was aware of "the Dayton situation." (ECF No. 69-15 at 72).  It is unclear whether Lieutenant Sturm was referring to plaintiff's discrimination complaint against Sergeant Dayton filed on or around November 12, 2014.  (ECF No. 53-15 at 8-9).   Even if Lieutenant Sturm had knowledge of plaintiff's discrimination complaint against Sergeant Dayton, however, plaintiff must still establish temporal proximity between her protected activity and the alleged retaliatory act.  Lewis, 187 F. Supp. 3d at 596.  Plaintiff's discrimination complaint against Sergeant Dayton was filed over nine months before plaintiff's involuntary transfer occurred on September 3, 2015.  (ECF No. 53-15 at 8-9, No. 53-15 at 1756).  "In order for temporal proximity alone to satisfy the causation prong of the prima facie case, the temporal proximity must be very close."  Lewis, 187 F. Supp. 3d at 597 (citing Allen, 273 F. Supp. 2d at 707).  "A six month lag is sufficient to negate any inference of causation." Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir.2001).   In this case, because plaintiff filed her complaint against Sergeant Dayton nine months before her transfer to Headquarters Security, the events are not sufficiently close in time to satisfy the temporal proximity requirement of the third element.  Accordingly, plaintiff has failed to establish the third element required for a prima facie case of retaliation, and summary judgment for defendants on plaintiff's retaliation claim is appropriate.

### D. **Burden-Shifting Approach**

Even if the court were to assume that plaintiff established prima facie cases for her disparate treatment claims and/or her retaliation claims, the McDonnell Douglas framework additionally requires the application of the burden-shifting approach. "Under the McDonnell Douglas three-step framework, 'the plaintiff-employee must first prove a prima facie case of discrimination by a preponderance of the evidence. If she succeeds, the defendant-employer has an opportunity to present a legitimate, non-discriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the prima facie case drops out of the picture and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination.'" Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004) (quoting Evans v. Technologies Applications & Service Co., 80 F.3d 954, 959 (4th Cir. 1996)). In this case, defendants provided that the legitimate, non-discriminatory reason for plaintiff's transfer was because of plaintiff's "unsatisfactory performance," specifically "fail[ing] to attend a critical meeting regarding a high profile court case." (ECF No. 53-15 at 1754).

Because defendant has met their burden and provided this non-discriminatory explanation, the burden then shifts back to plaintiff to rebut defendants' explanation as pretextual for retaliation and/or discrimination. Vannoy v. Fed. Reserve Bank of Richmond, 827 F.2d 296, 304 (4th Cir. 2016). In order "to prove by a preponderance of the evidence that the proffered reasons [for defendants' involuntary transfer of plaintiff] were pretextual," Wright v. Southwest Airlines, 319 F. App'x 232, 233 (4th Cir. 2009), plaintiff must show "both that [defendants'] reason was false and that [retaliation or discrimination] was the real reason for the challenged conduct." Fry v. Rand Construction Corp., 964 F.3d 239, 246 (4th Cir. 2020) (quoting Foster v. University of Maryland-Eastern Shore, 787 F.3d 243, 252 (4th Cir. 2015)). "[P]laintiff must produce sufficient

18

evidence to create a genuine dispute of material fact that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason, i.e., retaliation." Sharif, 841 F.3d at 203.  The "court must . . . evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." White v. W.R. Winslow Mem'l Home, Inc., No. 99-1781, 2000 WL 346497, at *2 (4th Cir. Mar. 15, 2000).

Plaintiff argues that defendants' reason for her transfer to Headquarters Security is pretextual because plaintiff was transferred "[i]n the wake of and in response to her complaints" of discrimination and retaliation.  (ECF No. 69-1 at 34).  Plaintiff also maintains that defendants' reason for plaintiff's involuntary transfer was pretextual because Lieutenant Sturm "seized on the opportunity [to transfer plaintiff] and made a reactive, unresearched decision."  (ECF No. 69-1 at 22).  Plaintiff lists a series of facts that she believes showcase why plaintiff's missed meeting with DSA Bledsoe was not the real reason Lieutenant Sturm requested plaintiff's transfer, including that Lieutenant Sturm did not follow up to make sure plaintiff attended the rescheduled meeting, did not know if any other police officer had ever missed a meeting with the SAO, and acknowledged that plaintiff had not been ordered or subpoenaed to appear at the meeting with DSA Bledsoe.  (Id.)  Yet, "[t]he crucial issue . . . is an unlawfully discriminatory motive for a defendant's action, not the wisdom or folly of its business judgment."  White, 2000 WL 346497, at *2.  Plaintiff's argument that Lieutenant Sturm's decision to recommend plaintiff's transfer was reactive and unresearched does not translate into "an unlawfully discriminatory motive" by Lieutenant Sturm.  Id.

19

The only evidence plaintiff offers to show that defendants' reason for transferring her was actually pretextual is a comment made by Lieutenant Sturm at the meeting when plaintiff was informed about her transfer to Headquarters Security.  (ECF No. 69-1 at 24).  Both plaintiff and Lieutenant Sturm recall that Lieutenant Wells and Sergeant Kim were present at this meeting. (ECF No. 69-15 at 72, ECF No. 69-22 at 37).  Plaintiff claims that Lieutenant Sturm told plaintiff that any supporting documents related to plaintiff's discrimination complaints would be forwarded.  (Id.)   Lieutenant Sturm denies making this comment.  (ECF No. 69-15 at 72).  Plaintiff does not offer any deposition testimony or an affidavit from Lieutenant Wells or Sergeant Kim regarding this comment, but rather offers her own personal diary entry to corroborate this comment.  (ECF No. 69-22 at 37-38).  Once more, plaintiff does not provide evidence besides her "self-serving opinion," which "cannot, absent objective corroboration, defeat summary judgment." CTB, Inc., 954 F.3d at 658 (quoting Williams, 370 F.3d at 433).  Moreover, even if Lieutenant Sturm made this comment, it is insufficient to create a genuine issue that plaintiff was transferred for a retaliatory or discriminatory reason.  In sum, even if plaintiff established a prima facie case of disparate treatment or retaliation, she has failed to rebut defendants' legitimate non-discriminatory reason for her transfer as pretextual.    Accordingly, summary judgment for defendants is appropriate on Counts I, II, and III.

## IV.     **CONCLUSION**

For the foregoing reasons, defendants' Motion for Summary Judgment (ECF No. 53) is GRANTED.  A separate order will be issued.

September 2, 2021                                    _____/s/_____
                                                     Beth P. Gesner
                                                     Chief United States Magistrate Judge